IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, | ) ) ) | CASE NO. 1:10 CV 2505 |
| Plaintiff, | ) ) ) | MAGISTRATE JUDGE WILLIAM H. BAUGHMAN, JR. |
| v. | ) ) | |
| MARINAC, LLC, *et al.*, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

## Introduction

Before me[1] is a motion for summary judgment by plaintiff National Credit Union Administration Board (NCUAB), acting as the liquidating agent of St. Paul Croatian Federal Credit Union (St. Paul), seeking recovery on a promissory note from defendant-cross claimant Petar Mlinac (Mlinac).[2] Mlinac opposes the motion,[3] and NCUAB has replied to that opposition.[4] For the reasons that follow, I will grant NCUAB's motion.

---

[1] The parties have consented to my exercise of jurisdiction (ECF # 40) and accordingly United States District Judge Benita Y Pearson ordered the matter transferred to me for further proceedings. ECF # 41.

[2] ECF # 124.

[3] ECF # 125.

[4] ECF # 126.

## Facts

**A.  Background**

The essential facts are not complex nor are they disputed. In October, 2002, Mlinac and co-defendant Dragan Maric – who were then each equal co-owners of Marinac, LLC – obtained a $303,500 loan from St. Paul for the use of Marinac.[5] Both Mlinac and Maric then executed a promissory note in the amount of the loan with St. Paul.[6] Nearly five years later, in April, 2007, Maric, acting alone but for the benefit of Marinac, borrowed an additional $430,000 from St. Paul and signed a promissory note.[7]

Essentially, the dispute here is over Mlinac's liability for the amounts represented by the two notes. Mlinac argues that the second note "is quite clearly the novation, reformation and cancellation" of the first note, done as part of the process by which the Marinac business was restructured so as that Mlinac's interests could be redeemed.[8] In that regard, he contends that former St. Paul president Tony Raguz purportedly said that, with the execution of the second note, Mlinac had no further liability under the first note.[9]

---

[5] ECF # 125 at 4 (NCUAB); ECF # 126 at 4 (Mlinac).

[6] *Id.*; *see also*, ECF # 1, Ex. C.

[7] ECF # 124 at 5; ECF # 125 at 10.

[8] ECF # 125 at 5-14.

[9] *Id.* at 9 (citing record).

Accordingly, Mlinac argues that because of this cancellation or novation, NCUAB has no claim against him.[10]

For its part, NCUAB maintains that the second note did not cancel or reform the first note nor did it release any maker of the first note from liability.[11] To that end, NCUAB contends first that a novation could not have occurred here because there was no consideration given by Mlinac for extinguishing his obligations under the first note.[12] In addition, NCUAB asserts that there is no evidence that St. Paul ever agreed to consent to a novation as required.[13] Finally, because a borrower cannot use an unrecorded side agreement made with a failed credit union as a defense to liability on a note held by the liquidating agent, NCUAB asserts that Mlinac is precluded from raising any defense to his liability on the first note based on any oral understanding with former officers of St. Paul.[14]

## Analysis

A.   **Standard of review – summary judgment**

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

---

[10] *Id.* at 14.

[11] ECF # 126 at 5.

[12] *Id*. at 6-7.

[13] *Id.* at 7.

[14] *Id*. at 9-11.

of law."[15] The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.[16]

A fact is "material" only if its resolution will affect the outcome of the lawsuit.[17] Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.[18] The court will view the summary judgment motion "in the light most favorable to the party opposing the motion."[19]

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.[20] Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[21] Moreover, if the

---

[15] Fed. R. Civ. P. 56(c).

[16] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).

[17] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[18] *Id.* at 252.

[19] *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[20] *McDonald v. Petree*, 409 F.3d 724, 727 (6th Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 322).

[21] *Leadbetter v. Gilley*, 385 F.3d 683, 689 (6th Cir. 2004) (quoting *Anderson*, 477 U.S. at 248-49).

evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.[22]

In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."[23] However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard.[24]

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.[25] The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury."[26] The text of Fed. R. Civ. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

---

[22] *Anderson*, 477 U.S. at 249-50 (citation omitted).

[23] *Id.* at 252.

[24] *March v. Levine*, 249 F.3d 462, 471 (6th Cir. 2001).

[25] *Anderson*, 477 U.S. at 256.

[26] *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

"In other words, the movant can challenge the opposing party to 'put up or shut up' on a critical issue."[27]

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'"[28] Rule 56(e) also has certain, more specific requirements:

> [it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.[29]

However, the district court may consider evidence not meeting this standard unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.[30]

---

[27] *BDT Prods. v. Lexmark Int'l*, 124 F. App'x 329, 331 (6th Cir. 2005).

[28] *Wiley v. United States*, 20 F.3d 222 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).

[29] *Id.* at 225-26 (citations omitted).

[30] *Id.* at 226 (citations omitted).

As a general matter, the judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law."[31] The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter.[32] The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[33]

In sum, proper summary judgment analysis entails:

> the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[34]

**B.    Application of standard – NCUAB is entitled to summary judgment.**

As a preliminary matter, there is no dispute, as NCUAB sets forth in its brief and exhibits, that note one is in default and that Mlinac signed the note.[35] Resolution of this motion, therefore, turns on whether note two constituted a novation of the first note.

The Sixth Circuit, applying Ohio law, has stated that "'[a] contract of novation is created where a previously valid obligation is extinguished by a new valid contract, accomplished by substitution of parties or of the undertaking, with the consent of all the

---

[31] *Anderson*, 477 U.S. at 248.

[32] *Id.* at 249.

[33] *Id.*

[34] *Id.* at 250.

[35] *See*, ECF # 126 at 11-12.

parties, and based on valid consideration..'"[36] The party invoking a novation bears the burden of showing "'evidence of the clear intent to form a new contract.'"[37] In that regard, while knowledge of and consent to a novation need not be expressly shown, but may be implied by conduct, all parties must consent to the novation and, whether express or implied, such consent must be "clear and definite, as a novation will never be presumed."[38]

Here, as NCUAB contends, Mlinac has first failed to show that any consideration was given for the claimed new contract. Absent such evidence, it argues, the second note cannot be a novation of the first since, at the least, novation requires the replacement of one valid contract with another valid contract.[39] For his part, Mlinac responds that the discharge of an existing obligation may provide consideration for a novation.[40]

Indeed, Mlinac is correct that the agreement of all parties to surrender their rights under an existing contract will be deemed sufficient consideration for those parties to enter

---

[36] *216 Jamaica Avenue, LLC v. S&R Playhouse Realty Co.*, 540 F.3d 433, 436 (6th Cir. 2008) (quoting *Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 994 (6th Cir. 2007) (internal quotation marks omitted, alteration in original).

[37] *Chicago Title*, 487 F.3d at 994 (quoting *Am. Vineyards Co. v. Wine Group*, 20 Ohio App. 3d 366, 486 N.E.2d 854, 857 (Ohio Ct. App. 1984).

[38] *Fitness Experience, Inc. v. TFC Fitness Equipment*, 355 F. Supp. 2d 877, 891 (N.D. Ohio 2004) (internal quotation marks and citations omitted).

[39] ECF # 126 at 6-7.

[40] ECF # 125 at 17 (citing *McGlothin v. Huffman*, 94 Ohio App.3d 240, 244, 640 N.E.2d 598, 600 (Ohio Ct. App. 1994) (citation omitted).

-8-

a new contract.[41] However, even if true, this merely begs the questions of whether (1) St. Paul did actually agree to surrender its rights under the first note so as to make the second note, thereby releasing Mlinac from his obligation under that first note and substituting only Maric and Marinac in a new contract, and (2) how such intent is here to be established.

Initially, I note that both parties accept that the actual terms of the second note itself do not reveal a clear intent by St. Paul to surrender its rights under the first note and enter a new contract, minus Mlinac, for repayment of those loan amounts in the second note. Accordingly, the issue is whether the proof of that intent may be found elsewhere.

Mlinac raises essentially two arguments regarding St. Paul's intent at the time the second note was signed:

(1) the records of St. Paul in administering the second note, while in part incomplete and confusing, show that there were not two distinct loans, but rather a continuation of the first loan under new terms, such as the elimination of Mlinac's name on the business account from which the loan was being repaid;[42] and

(2) an officer of St. Paul acknowledged at the time the second note was signed by Maric the intent of St. Paul to remove Mlinac from liability under the first note.[43]

---

[41] *See*, *Air Conditioning Co. of Hawaii v. Richards Constr. Co. - Kaneohe Bay Project*, 200 F. Supp. 167, 172 (D. Hawaii 1961) (citing Restatement of Contracts, 406).

[42] ECF # 125 at 8-13.

[43] *Id*. at 11-12.

-9-

NCUAB, for its part, rests its argument largely on 12 U.S.C. § 1787(p)(2), which, it contends, precludes Mlinac as a matter of law from relying on either of the preceding arguments to defeat NCUAB's right to collect on the first note.[44]

As NCUAB observes, the statute provides in pertinent part that in connection with the liquidation of a credit union:

> (2) No agreement which tends to diminish or defeat the right, title, or interest of [NCUAB] in any asset acquired by it under this subsection, either as security for a loan or by purchase, shall be valid against [NCUAB] unless such agreement –
>
> (A) shall be in writing;
>
> (B) shall have been executed by the credit union and the persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the credit union;
>
> (C) shall have been approved by the board of directors of the credit union, which approval shall be reflected in the minutes of the board; and
>
> (D) shall have been, continuously from the time of its execution, an official record of the credit union.[45]

As numerous courts have stated, the statute here is designed to ensure that regulators may rely on the official written agreements in an institution's books and records without fear that such records can be later undermined by claims based on unwritten agreements to the contrary.[46] To that end, courts have concluded that institutional records of a nature other than

---

[44] ECF # 124 at 11-14.

[45] 12 U.S.C. § 1787(p)(2).

[46] *First State Bank of Wayne County, Kentucky v. City and County Bank of Knox County, Tennessee*, 872 F.2d 707, 715 (6th Cir. 1989).

those specified in the statute which only infer the existence of an agreement do not qualify to prove a claim against NCUAB.[47] In addition, the statute precludes a borrower, such as here, from relying on claims that a bank president orally represented that the borrower was relieved of a loan obligation.[48] Further, NCUAB's actual knowledge of the nature of the transaction at issue is irrelevant.[49] Nor may application of the statute be defeated by asserting, as here, that a written agreement approved by the bank may be inferred from scattered records in the institution.[50] Moreover, as NCUAB also notes,[51] the statute is not restricted, as Mlinac suggests,[52] to cases where the borrower engaged in a scheme or plan to evade liability.[53]

In sum, as Judge Gwin noted in *Aurora Shores Homeowners Association, Inc. v. F.D.I.C.*,[54] it is "well-settled that any alleged agreement whatsoever which diminishes the interest of the [FDIC] in an asset is absolutely invalidated, as against the [FDIC], unless each

---

[47] *Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1579 (10th Cir. 1993).

[48] *Abrams v. F.D.I.C.*, 944 F.2d 307 (6th Cir. 1991).

[49] *First State Bank,* 872 F.2d at 717.

[50] *Castleglen*, 984 F.2d at 1579.

[51] ECF # 126 at 10.

[52] ECF # 125 at 18.

[53] *See*, *F.D.I.C. v. McCullough*, 911 F.2d 593, 600-01 (11th Cir. 1990) ("neither a claim of lack of intent to deceive banking authorities nor a claim that the purported secret arrangement was not by its nature fraudulent is sufficient to defeat the application of [the statute]").

[54] *Aurora Shores Homeowners Ass'n v. F.D.I.C.*, 2 F. Supp. 2d 975 (N.D. Ohio 1998).

of the statutory requirements [of the statute] are met."[55] In this case, Mlinac has proffered no written agreement, executed contemporaneously with the alleged novation, approved by St. Paul's board of directors and contained in the minutes of the board, as a continuous record from that date. As such, his arguments notwithstanding, Mlinac has provided no cognizable proof of a novation and thus no basis for denying NCUAB's motion for summary judgment.[56]

## Conclusion

For the foregoing reasons, NCUAB's motion for summary judgment is granted. The trial scheduled to commence on November 27, 2012, is continued. The parties are given until January 15, 2013, to complete discovery on damages. A status conference is set for January 22, 2013, at 11:00 a.m. Only lead counsel need attend.

IT IS SO ORDERED.

Dated: November 19, 2012					s/ William H. Baughman, Jr.
								United States Magistrate Judge

---

[55] *Id.* at 978 (internal citation and quotation marks omitted).

[56] I realize that Mlinac is frustrated because he alleges that in good faith that he believed his liability on the first note was resolved based on the representations of Dragan Maric and Tony Raguz at the time of the execution of the second note. For purposes of this motion, the NCUAB does not take issue with his belief. The statute, 12 U.S.C. § 1787(p)(2), requires more than oral statements, a good faith belief, and the kind of documentation on which Mlinac attempts to rely here.